**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **ANNETTE RYAN,** *now known as Katz*, ) | **CASE NO. 1:15-cv-02384-DAP** |
| ) | |
| Plaintiff, ) | **JUDGE DAN AARON POLSTER** |
| ) | |
| vs. ) | <u>**OPINION AND ORDER**</u> |
| ) | |
| **ROBERT A. MCDONALD,** *Secretary,* ) | |
| *United States Department of Veterans Affairs*, ) | |
| ) | |
| Defendant. ) | |

Before the Court is Defendant's Partial Motion to Dismiss (the "Motion"), Doc #: 8. For the reasons discussed herein, the Motion is granted in part.

**I. Background**

    **A. Factual Allegations**

According to the Amended Complaint, Plaintiff Annette Ryan was employed by the U.S. Department of Veterans Affairs (the "VA") as a Licensed Practical Nurse from November 2011 through November 2014. Am. Compl. ¶¶ 1, 3, 12, 13, Doc #: 5.

Ryan alleges that during her employment, from Summer 2012 to March 2013, Ryan's coworker, MD Garrett, sexually harassed and assaulted her. *Id.* ¶¶ 16–21. This harassment and

assault included statements made by Garrett, such as "I want to Fuck you," "I want to stick my big dick in your pussy," "Trust me, I know how to make you smile," and "I love you and you will say yes one of these days and we will be together so stop fighting it," among other statements. *Id.* ¶ 20.  This harassment and assault also included physical acts by Garrett, such as "try[ing] to kiss Ms. Ryan against her will," "[r]epeatedly grabbing Ms. Ryan, mauling her, touching her breast, touching her butt, rubbing his penis on her, and making licking sounds while physically accosting her," and "[g]rabbing Ms. Ryan from behind and physically forcing her into a linen closet on a number of occasions, forcing himself on Ms. Ryan, and forcing his tongue in her mouth, while restraining her from getting to the door," among other acts. *Id.* ¶¶ 17, 21.  Garrett also told Ryan that he had a concealed carry permit and sometimes kept a weapon in his car. *Id.* ¶ 23.

Ryan repeatedly asked Garrett to stop and was afraid of Garrett. *Id.* ¶¶ 22, 24.

On March 28, 2013, Ryan sought help from her union. *Id.* ¶ 26.  Thereafter, Ryan "was harassed and threatened by co-workers," but other female employees complained that Garrett had harassed them, as well. *Id.* ¶¶ 27, 28.[1]

Ryan requested transfer to another location, and her doctor recommended she be transferred. *Id.* ¶¶ 29, 31–33.  Ryan's requests for transfer and for accommodation were denied and she exhausted her leave time while seeking transfer and accommodation. Am. Compl. ¶¶ 30, 34–35.

Ryan alleges constructive discharge from the VA in November 2014. *Id.* ¶ 13.

---

[1] On March 28, 2013, VA management placed Garrett on authorized absence pending a police investigation.  Ultimately, in July of 2013, Garrett was arrested and incarcerated in connection with Ryan's court action against him. First Final Agency Decision 2–3, Doc #:8-3 [hereinafter First FAD].

### B. Administrative History

Ryan's co-worker, Garrett, allegedly began harassing Ryan in the Summer of 2012. *Id.* ¶16. Ryan first sought help from her union representative and the Equal Employment Opportunity ("EEO") office on March 28, 2013, when she reported employment discrimination, emotional distress, assault, and battery to the VA's Office of Resolution Management. *Id.* ¶¶ 10, 26. On that same day, Ryan filed a police report with the VA's law enforcement officials including an OIG federal agent and a VA detective. *Id.* Ryan also told her supervisor that she feared for her safety at the VA facility. First FAD 3. Ryan's supervisor placed Ryan on authorized absence from March 28, 2013, until April 2, 2013. *Id.* 2–3.

On March 29, 2013, Ryan requested a transfer to an alternative work site from her supervisor. *Id.* 2. Ryan was granted, at her request, twelve consecutive weeks of Family and Medical Leave Act-related ("FMLA") leave for April 9, 2013 through July 1, 2013. *Id.* 3. Ryan also requested and was granted 240 hours of advanced sick leave. *Id.*

On May 10, 2013, Ryan initiated contact with an EEO counselor. EEO Compl. Acceptance Letter 1, Doc #: 8-2. By July 17, 2013, Ryan exhausted the maximum amount of advanced sick leave and authorized absences allotted in a calendar year, and she was placed on Leave Without Pay ("LWOP"). First FAD 3. As of August 7, 2013, Ryan's EEO counseling was complete, and she was notified of her right to file an official discrimination complaint. EEO Compl. Acceptance Letter 1. On August 14, 2013, Ryan filed a formal complaint of discrimination (VA Form 4939) to the Equal Employment Opportunity Commission ("EEOC") which included allegations of sex discrimination, hostile work environment, and reprisal for her initial harassment complaint. *Id.* 1–2. Ryan's formal complaint to the EEOC included five

claims that were divided into two complaints— a "mixed case complaint" consisting of one claim and a "non-mixed case complaint" consisting of the other four claims. *Id.* The "mixed case complaint" consisted of Ryan's allegation that she was constructively suspended. *Id.* 2. The "non-mixed case complaint" included allegations of reprisal, hostile work environment, and discrimination on the basis of sex. *Id.* 1–2.

On August 28, 2013, Ryan requested to return to work at the VA facility. First FAD 3. On September 30, 2013, Ryan was approved for 480 additional hours of LWOP, at her supervisor's request, for September 3, 2013 through December 2, 2013, based on documentation Ryan submitted regarding her emotional distress symptoms. *Id.* On November 27, 2013, Ryan's doctor provided, "Unless reassigned to work on a different unit, her time off needs to continue indefinitely." Am. Compl. ¶ 32. On December 20, 2013, Ryan submitted a Written Confirmation of Request for Accommodation. *Id.* ¶ 33.

On May 29, 2014, Ryan received her first Final Agency Decision ("FAD") for her "mixed case complaint" (issued May 23, 2014) from the VA's Office of Employment Discrimination Complaint Adjudication ("OEDCA"). First FAD 1; Long Decl. ¶ 2A, Doc #: 8-4. The OEDCA found that Ryan failed to prove discrimination and informed Ryan of her right to appeal the decision to the MSPB. First FAD 9–10. There is no record indicating Ryan pursued an appeal to the MSPB. Robinson Decl., Doc #: 8-10.

On June 26, 2014, Ryan received a second FAD on the "non-mixed case complaint" (issued June 20, 2014) from the OEDCA finding Ryan's formal complaint failed to prove reprisal, hostile work environment and discrimination on the basis of sex and informed her of her right to appeal to the EEOC. Second Final Agency Decision 18, Doc #: 8-5 [hereinafter Second

FAD]; Am. Compl. ¶ 11.  On July 14, 2014, Ryan submitted an appeal on her "non-mixed" claims to the EEOC. Am.Compl. ¶ 11.

### C. Case History

On October 14, 2015, Ryan filed the instant case in Cuyahoga County Court of Common Pleas, alleging eight claims against Robert A. McDonald, Secretary of the VA. Summons and Compl., Doc #: 1-1.  On November 20, 2015, the VA removed the case to federal court. Notice of Removal, Doc #: 1.

On January 13, 2016, the VA moved for dismissal, and on February 3, Ryan filed an Amended Complaint. Doc #: 5.  In the Amended Complaint, Ryan alleges nine claims: 1) sexual harassment / hostile work environment, 2) gender discrimination, 3) retaliation, 4a)[2] disability discrimination, 4b) negligent hiring, retention, supervision, 5) assault, 6) battery, 7) intentional infliction of emotional distress, and 8) violations of due process and substantive rights.

The instant Partial Motion to Dismiss, Doc #: 8, was filed on March 18, 2016, and became ripe on May 2. This Opinion and Order follows.

## II. Legal Standard

Pursuant to the Federal Rules of Civil Procedure, a court may dismiss claims filed in a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).  "Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir.1990).

---

[2] The Complaint includes two "Count IV" claims that the Court will refer to as "a" and "b" when necessary to avoid confusion.

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally fall under one of two categories: facial attacks or factual attacks. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990). A facial attack tests the sufficiency of the pleading. *Id.* at 324. When reviewing a facial attack, the court must take the material allegations of the pleading as true and construe them in the light most favorable to the non-moving party. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In contrast, a factual attack is a challenge to the factual existence of subject matter jurisdiction. *Ohio Nat'l*, 922 F.2d at 325. If a Rule 12(b)(1) motion makes a factual attack, a court is free to consider and weigh extrinsic evidence of its own jurisdiction, without granting the plaintiff's allegations any presumption of truthfulness, until the court is satisfied of the existence of its power to hear the case. *Id.*

Lack of subject matter jurisdiction is a non-waivable, fatal defect. *Watson v. Cartee*, 817 F.3d 299, 302–03 (6th Cir. 2016).

**III. Discussion**

The VA moves for dismissal on the basis of subject matter jurisdiction.[3] The motion makes a factual attack on the Amended Complaint, insofar as the VA seeks to introduce evidence outside the pleadings to demonstrate the absence of jurisdiction. However, none of the facts underlying the Court's evaluation of jurisdiction appear to be in dispute, rather the parties disagree about which claims may proceed, as a matter of law.

For the reasons discussed below, Counts 1, 2, and 3 are dismissed in part and Counts 4b, 5, 6, 7, and 8 are dismissed in their entirety.

---

[3] The VA moves to dismiss pursuant to Rule 12(b)(1) and also, nominally, pursuant to Rule 12(b)(6). However, the motion appears to be argued—and is being decided—entirely on the basis of subject matter jurisdiction, so the Court will only address Rule 12(b)(1).

-6-

**A. Sovereign Immunity**

The VA has moved to dismiss several of Ryan's claims for lack of subject matter jurisdiction on the basis—either directly or indirectly—of the VA's sovereign immunity. A brief discussion of sovereign immunity will thus be beneficial.

Under modern law, the United States generally enjoys sovereign immunity against lawsuits.[4] The Sixth Circuit Court of Appeals has recently summarized,

> It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction. In other words, the United States cannot be sued at all without the consent of Congress. Sovereign immunity extends to agencies of the United States or federal officers acting in their official capacities. A waiver of sovereign immunity may not be implied and exists only when Congress has expressly waived immunity by statute.

*Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013) (internal citations and quotation marks omitted). As a result, "[w]ithout a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities."

Importantly, Congress has consented to suit in certain contexts and thus created several limited exceptions to the United States's sovereign immunity. Common exceptions to sovereign immunity include the Federal Torts Claims Act, 28 U.S.C. § 2674, which provides, "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ."; the Administrative Procedure Act, 5 U.S.C. § 702, which waives sovereign immunity for "all

---

[4] Relevant here, sovereign immunity also extends to suits against government officials when sued in their *official* capacities. *Kentucky v. Graham*, 473 U.S. 159, 165–67 (1985).

non-monetary claims against federal agencies and their officers sued in their official capacity," *Muniz-Muniz*, 741 F.3d at 672; and the Equal Access to Justice Act, 28 U.S.C. § 2412, which waives sovereign immunity for costs.

In short, absent an act of Congress, a private party may not sue the United States. Here, because the suit alleges *only* claims against the VA—a department of the United States government—each claim may proceed only within the context of an applicable waiver of sovereign immunity.

**B. Counts I, II, and III**

Ryan's first three claims are 1) Sexual Harassment / Hostile Work Environment, 2) Gender Discrimination, and 3) Retaliation, all brought under both Title VII of the Civil Rights Act of 1964 and Chapter 4112 of the Ohio Revised Code. These claims must be dismissed insofar as they are based on Ohio law.

When Congress amended Title VII in 1972, Congress effected a limited waiver of the United States' sovereign immunity. *Loeffler v. Frank*, 486 U.S. 549, 558–59 (1988) ("As originally enacted in 1964, Title VII, by excluding federal entities from its definition of employer, did not provide a cause of action to federal employees. In 1972, Congress amended Title VII by adding its § 717, which brought federal employees . . . within the ambit of Title VII."). "Title VII prohibits discrimination in employment on the basis of race, color, religion, sex, and national origin, 42 U.S.C. § 2000e-2, and provides the exclusive remedy for such claims in federal employment." *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 993 (6th Cir. 2009); *accord Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976) ("[Section] 717 of the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in

federal employment."); *see Wallace v. Henderson*, 138 F. Supp. 2d 980, 984 (S.D. Ohio 2000) (dismissing a Ohio Revised Code § 4112.02 claim "on that ground that Title VII provides Plaintiff's sole remedy for retaliation in the workplace.").

Here, Ryan's claims for Sexual Harassment and Hostile Work Environment, Gender Discrimination, and Retaliation pursuant to Ohio law must be dismissed for two related reasons. First, Title VII is the exclusive remedy for any claim against the United States which falls within that statute's purview. *See Wallace*, 138 F. Supp. at 986. Ryan's three Chapter 4112 claims are all within the scope of Title VII, a fact which is demonstrated most succinctly by Ryan's filing of these claims both under Title VII as well as Chapter 4112. Second, and perhaps more importantly, Chapter 4112—unlike Title VII—is not the subject of any waiver of the United States' sovereign immunity.

Thus, because the VA enjoys immunity from the alleged state law violations, the Court lacks subject matter jurisdiction over Ryan's Chapter 4112 claims for Sexual Harassment / Hostile Work Environment, Gender Discrimination, and Retaliation claims, and, these three state law claims are accordingly dismissed.

**C. Count VIII**

The eighth count of Ryan's Amended Complaint alleges violations of her substantive rights and right to due process pursuant to 42 U.S.C. § 1983. As with her Chapter 4112 claims, these claims must be dismissed for lack of subject matter jurisdiction.

As a general matter, claims arising under 42 U.S.C. § 1983 may only be brought against state officials acting under color of state law, not federal actors acting under color of federal law. *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 429 (6th Cir. 2016). Ryan's claims

pursuant to 42 U.S.C. § 1983 are against the VA, a federal agency; thus, Ryan's due process claims as brought under 42 U.S.C. § 1983 are inappropriate and subject to dismissal.

That being said, it would be remiss for this Court to dismiss Ryan's claims based solely on her misapplication of 42 U.S.C. § 1983 and ignore the existence of a *Bivens*[5] "federal analog" to 42 U.S.C. § 1983, which applies to federal actors. *Hartman v. Moore*, 547 U.S. 250, 255 (2006). However, even if Ryan had cast her due process claims as a *Bivens* action, her claims must still be dismissed for lack of subject matter jurisdiction.

Claims arising under 42 U.S.C. § 1983 and *Bivens* are generally analyzed similarly. *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015). However, there exists a key difference relevant here. When bringing a claim under 42 U.S.C. § 1983, a plaintiff may sue both a state official in his or her individual capacity as well as a state government entity (including its agents in their official capacities) if the entity's policies are responsible for a deprivation of the plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). In contrast, under *Bivens,* a plaintiff may *only* sue a federal official in his or her individual capacity *but not* the federal agency (including its agents named in their official capacities). *FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994) ("[T]he purpose of *Bivens* is to deter *the officer*. . . . An extension of Bivens to agencies of the Federal Government is not supported by the logic of *Bivens* itself."). Put another way, there is no *Monell* equivalent in a *Bivens* action.

Thus, because Ryan's suit against the Secretary in his official capacity is a suit for money damages against the VA, Ryan's due process claims may not proceed under either 42 U.S.C. §

---

[5] The Supreme Court created a private right of action against federal actors who violate a plaintiff's constitutional rights in the landmark decision *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

1983 or *Bivens*; Ryan's claim is accordingly dismissed for lack of subject matter jurisdiction.

**D. Counts IV-b, V, VI, and VII**

Ryan's Amended Complaint alleges that the VA committed several torts: 4b) negligent hiring, retention, and supervision; 5) assault; 6) battery; and 7) intentional infliction of emotional distress. Ryan's tort claims against the VA cannot survive because Ryan has not exhausted her administrative remedies under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq.[6]

The FTCA operates as a waiver of the United States' sovereign immunity for tort suits and provides the district courts with jurisdiction over civil actions in which plaintiffs seek money damages from the United States for "injury or loss of property, or personal injury or death." 28 U.S.C. § 1346(b)(1). "A prerequisite to suit under the FTCA, however, is the exhaustion by the plaintiff of administrative remedies." *Lundstrum v. Lyng*, 954 F.2d 1142 ,1145 (6th Cir. 1991); *accord* 28 U.S.C. § 2675.

In order to exhaust administrative remedies under the FTCA, a claimant must provide written notice of her tort claim to the agency and place a value (a "sum certain") on the claim. *Douglas v. United States*, 658 F.2d 445, 447 (6th Cir. 1981); *see also Allen v. United States*, 517 F.2d 1328, 1329 (6th Cir. 1975) (noting a plaintiff has two years from the time the claim accrues to file an administrative tort claim with the agency and may only proceed to district court after the agency either renders a decision or fails to act on the claim within six months). The Sixth Circuit has held that while including a "sum certain" is a "technical" requirement, a claim for damages in sum certain "is a prerequisite for filing a FTCA claim in this circuit." *Glarner v.*

---

[6] Accordingly, the Court need not and does not address the Federal Employees Compensation Act.

*United States Dep't of Veterans Admin.,* 30 F.3d 697, 700 (6th Cir. 1994); *Allen*, 517 F.2d at 1329–30 (holding that a plaintiff could not bring a personal injury tort claim in district court when he filed an administrative tort claim that placed a value on property damages but left the "personal injury" section of his claim blank); *see, e.g.*, *Rosema v. Potter*, No. 1:08-CV-161, 2008 WL 4426335 at *8, 2008 U.S. Dist. LEXIS 82758 at *24–25 (W.D. Mich. Sept. 26, 2008) (holding that a plaintiff's EEOC complaint was insufficient to put the agency on notice of plaintiff's tort claims because, among other things, he did not allege damages related to any torts or a sum certain); *Folley v. Henderson*, 175 F. Supp. 2d 1007, 1015 (S.D. Ohio 2001) (holding that even if plaintiff's EEOC complaint could be construed as notice of plaintiff's tort claims, plaintiff did not exhaust his administrative remedies because he failed to include a sum certain).

Here, there is no record that Ryan filed an administrative tort claim to the VA prior to filing suit in district court. *See* McGuire Decl., Doc #: 8-7, ¶ 4. Ryan only provided the agency with notice in the form of an EEOC complaint, but that complaint included neither tort allegations nor a sum certain. Thus, Ryan has failed to exhaust her administrative remedies under the FTCA and the Court lacks subject matter jurisdiction over Ryan's tort claims.

It is also worth noting that although the FTCA functions as a broad waiver of the United States' sovereign immunity for tort claims, the "intentional tort exception" preserves immunity from claims "arising out of" certain torts such as assault, battery, and false imprisonment. *Millbrook v. United States*, 133 S. Ct. 1441, 1443 (2013); 28 U.S.C. § 2680(h). A plaintiff "cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery. Section 2680(h) does not merely bar claims for assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery." *United States v.*

*Shearer*, 473 U.S. 52, 55 (1985); *accord United States v. Neustadt*, 366 U.S. 696, 710–11 (1961) (holding that claims "arising out of" misrepresentation include negligence that causes inaccurate representation). In her Opposition to the Motion, Ryan acknowledges she is not alleging the United States literally assaulted or battered her, but rather contends that the United States was negligent in failing to prevent Ryan from being assaulted and battered. Opposition 3, Doc #: 10. Regardless of this recasting, however, Ryan's tort claims for assault and battery *arise out of* alleged assault and battery, and are consequently barred.

### E. Mixed Case Claim

In her formal complaint to the EEOC, Ryan raised a "mixed case complaint" by asserting that she was constructively suspended as a result of being forced into LWOP status in an indirect attempt to terminate her employment. Ryan's claims, insofar as they are based on her mixed case complaint for constructive suspension, may not proceed because Ryan did not file suit within the statute of limitations governing mixed case complaints.

"A mixed case complaint is a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age, disability, or genetic information related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB)." 29 C.F.R. § 1614.302(a)(1).[7] Actions appealable to the MSPB include, among other things, terminations, suspensions of more than fourteen days, and furloughs for thirty days or less. 5 C.F.R. § 1201.3(a)(1). A mixed case complaint originally filed with the

---

[7] For their investigation, here, the EEOC divided Ryan's claims into five events: events one through four made up the "non-mixed case complaint" that alleged hostile work environment, reprisal, and sex discrimination, and event five made up the "mixed-case complaint" and alleged constructive suspension based on discrimination ("Event Five"). EEO Compl. Acceptance Letter 1–2.

EEOC may be appealed to the MSPB or an appropriate United States district court within thirty days of the complainant's receipt of a FAD. *Valentine-Johnson v. Roche*, 386 F.3d 800, 806 (6th Cir. 2004); 29 C.F.R. § 1614.310(a).

Because constructive suspension is a type of personnel action that may be appealed to the MSPB, and because Ryan contends her constructive suspension was a result of employment discrimination, Ryan's Event Five is a mixed case complaint. Here, in a single document, Ryan filed both her Event Five "mixed case complaint" and her "non-mixed case complaint" with the EEOC for consideration. The EEOC issued an adverse FAD for her "mixed case complaint" on May 23, 2014, and Ryan received it on May 29, 2014. Ryan did not appeal this decision to the MSPB but instead pursued judicial review in an appropriate district court. However, Ryan did not file that complaint for judicial review until October 13, 2015, more than a year after receipt of the FAD.

Ryan failed to appeal the adverse decision on her "mixed case complaint" within the thirty day statute of limitations; thus, the Court lacks subject matter over Ryan's constructive suspension "mixed case complaint."

**F. Count IV-a**

The VA moves to dismiss Ryan's fourth count—alleging that the VA denied her reasonable accommodation for her disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*.—because Ryan has failed to exhaust her administrative remedies. The Court finds that Ryan has adequately exhausted her administrative remedies and this claim may proceed.

### 1. Exhaustion Rules

Exhaustion of administrative remedies is a prerequisite to seeking judicial remedies against federal employers pursuant to the Rehabilitation Act. *Smith v. United States Postal Serv.*, 742 F.2d 257, 262 (6th Cir. 1984). The Rehabilitation Act adopted the same administrative remedies and exhaustion requirements as those required to address disability discrimination claims under Title VII. *Id.* at 261. The exhaustion of administrative remedies for federal employees generally includes consultation with an EEO counselor within forty-five days of the allegedly discriminatory incident, 29 C.F.R. § 1614.105(a)(1); filing an individual complaint of discrimination with the allegedly discriminatory agency, 29 C.F.R. § 1614.106(a); and receipt of a final agency decision, 29 C.F.R. § 1614.110(a). Therefore, a plaintiff has exhausted her administrative remedies with respect to a specific claim if she includes that claim in her official complaint to the EEOC, thereby ensuring the EEOC was on notice of the claim during its investigation.

However, the Sixth Circuit does not find failure to include a potential claim in an EEOC complaint to be dispositive of a failure to exhaust administrative remedies with respect to that claim. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). If a plaintiff's claim is not explicitly included in an EEOC complaint and FAD, it may still proceed to judicial review so long as the claim is reasonably expected to "grow out of" claims that were included in the EEOC complaint. *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 379 (6th Cir. 2002). "The requirement, however, is not meant to be overly rigid, nor should it result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading. As a result, the EEOC complaint should

be liberally construed to encompass all claims reasonably expected to grow out of the charge of discrimination." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (internal citations and quotation marks omitted). Basically, if the facts surrounding an explicitly charged claim would put the EEOC on notice of potential uncharged claims during their investigation, a plaintiff may bring suit on both the claims explicitly charged in and implicitly implicated by her EEOC complaint.

Furthermore, a plaintiff will not be barred from raising an uncharged claim in court simply because the EEOC failed to investigate an uncharged claim that reasonably grew out of claims in the complaint. *Dixon*, 392 F.3d at 219.

### 2. Application

Whether Ryan exhausted the administrative remedies for her disability claim depends on whether the EEOC should have been on notice of a possible disability claim based on the allegations explicitly and implicitly made in Ryan's formal complaint. The Court holds, based on the facts presently available, for jurisdictional purposes, that the VA was on notice.

The general rule in this circuit is that the "judicial complaint must be limited 'to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination.'" *Weigel*, 302 F.3d at 380 (quoting *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991)). However, the standard for what reasonably falls within the scope of the EEOC's investigation has not been clearly delineated.

The Sixth Circuit has held that a plaintiff's uncharged claim does not necessarily grow out of a charged claim simply because the plaintiff is a member of more than one minority group. In *Davis v. Sodhexo*, a plaintiff filed a complaint with the EEOC alleging race discrimination and

-16-

was subsequently precluded from bringing suit alleging previously uncharged discrimination based on age.157 F.3d 460, 464–65 (6th Cir. 1998). The court held that the plaintiff's complaint asserting discrimination based strictly on race did not give the EEOC any notice to investigate age-based claims; in fact, the only reference to age in the plaintiff's complaint was that her age was listed on the general complaint form. *Id.* The EEOC is not expected to investigate every potential form of discrimination that could have occurred absent some factual connection to the charged form of discrimination.

Several district courts have suggested that subsequent acts of discrimination occurring during the pendency of an EEOC investigation do not reasonably fall within the scope of the investigation absent a factual relationship to claims in the formal EEOC complaint. In *Hawkins v. Ctr. for Spinal Surgery*, a plaintiff's pregnancy discrimination claim, which was not included in her formal EEOC complaint alleging racial discrimination and retaliation, was dismissed because the plaintiff was not pregnant at the time she filed her EEOC complaint; thus, the EEOC was not reasonably expected to investigate the uncharged pregnancy claim because it was wholly unaware the plaintiff became pregnant after filing. 34 F. Supp. 3d 822, 834–35 (M.D. Tenn. 2014). Similarly, the VA prompted this Court to consider *Maeder v. Hollywood Casino* wherein a plaintiff sought judicial review of a discriminatory termination claim even though his formal complaint to the EEOC (made prior to his termination) only alleged racial discrimination and retaliation surrounding disciplinary treatment he received while employed. 97 F. Supp. 3d 941 (S.D. Ohio 2015). The *Maeder* court stated that Sixth Circuit authority suggests it is unreasonable to assume the EEOC will investigate subsequent conduct that occurs during an ongoing investigation absent a factual connection to the conduct described in the formal

-17-

complaint; thus, the plaintiff's discriminatory termination claims were dismissed because the facts surrounding the plaintiff's disciplinary treatment while employed were factually distinct from his termination. *Id*. at 946.

In contrast, plaintiffs were not precluded from seeking judicial review of their uncharged retaliation claims in *Garcimonde-Fisher v. Area203 Mktg., LLC*, even though they failed to include a retaliation claim in their official EEOC complaint. 105 F. Supp. 3d 825, 835–836 (E.D. Tenn. 2015).  Plaintiffs claimed they were retaliated against by their employer for refusing to participate in mandatory religious events. *Id.* at 833.  The court ruled that the EEOC was on notice of retaliation because the EEOC had actually investigated and found probable cause suggesting that plaintiffs were discharged, at least in part, based on their refusal to participate in religious events. *Id.* at 835–836.  Thus, the plaintiffs had adequately exhausted their administrative remedies for their retaliation claims. *Id.*

While Ryan did timely consult an EEO counselor and file a complaint for which she received a FAD, Ryan's complaint only alleged a hostile work environment based on sex discrimination and reprisal.  Ryan failed to include a disability claim in her original complaint filed to the agency, resulting in a final agency decision that did not specifically address disability.  Thus, Ryan did not *explicitly* put the EEOC on notice of a potential disability claim.

However, a disability discrimination claim did reasonably grow out of the claims in Ryan's EEOC complaint.  Unlike the plaintiffs in *Hawkins* and *Maeder*, Ryan's disability claims are factually related to the claims in her formal complaint such that the EEOC should have investigated disability discrimination.  In this case, the EEOC was aware of Ryan's medical problems resulting from sexual harassment at the time she filed her EEOC complaint.  In fact, the

EEOC's FAD included a factual account of Ryan's medical problems beginning prior to the filing of her complaint. *See* First FAD 3; Second FAD 3. The EEOC's FAD also outlined the various accommodations Ryan sought "in light of her emotional state," including authorized absences, leave under the FMLA, enrollment in the Leave Transfer Program, and LWOP. Second FAD 12. As in *Garcimonde-Fisher*, Ryan's EEOC complaint actually led the EEOC to investigate a claim that was not charged in her official complaint. The EEOC's investigation and consideration of Ryan's medical problems and accommodation requests in its two FADs indicates Ryan's disability claims have a factual connection to claims charged in the EEOC complaint such that the latter claims might reasonably grow out of her charged discrimination claims.

Furthermore, the EEOC recognized the relationship between Ryan's sexual discrimination claims and her disabilities. As in *Davis*, Ryan belongs to more than one minority group: one based on sex and another based on disability. However, Ryan's case is distinguishable because her membership in the disability minority group does not exist independent of her membership in the sex-based minority group. The EEOC noted that Ryan's alleged disability is a result of her experiencing sexual discrimination, acknowledging this causal link in their FAD by stating, "As a result of [Garrett's] alleged conduct, the Complainant suffers from post-traumatic stress disorder (PTSD) and severe anxiety." Second FAD 3. That a discussion of Ryan's disability *actually* grew out of the EEOC's discussion of her sexual discrimination claims strongly suggests her disability claims might reasonably be expected to grow out of her sexual discrimination claims, and that the EEOC was clearly on notice of her disabilities.

In sum, Ryan provided enough fact in her EEOC complaint to put the EEOC on notice of a possible disability discrimination claim. Ryan's disability claim could be reasonably expected to grow out of her other discrimination claims such that she exhausted her administrative remedies, and she is consequently not precluded from seeking judicial review regarding disability discrimination on the basis of subject matter jurisdiction.

**IV. Conclusion**

For the reasons described above, Defendant's Partial Motion to Dismiss, Doc #: 8, is GRANTED in part. The claims based on the mixed-case complaint, claims for violation of Chapter 4112 of the Ohio Revised Code; claim for negligent hiring, retention, and supervision; claim for assault; claim for battery; claim for intentional infliction of emotional distress; and claim for violations of due process and substantive rights are dismissed for lack of subject matter jurisdiction. The remaining Title VII and Rehabilitation Act claims may proceed.

IT IS SO ORDERED.

                                                                   */s/ Dan A. Polster     June 13, 2016*
                                                                   **DAN AARON POLSTER**
                                                                   **UNITED STATES DISTRICT JUDGE**