**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ANNETTE RYAN,** | ) | **CASE NO. 1:15-CV-02384** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE DAN AARON POLSTER** |
| | ) | |
| **vs.** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **DAVID J. SHULKIN, SECRETARY,** | ) | |
| **UNITED STATES DEPARTMENT** | ) | |
| **OF VETERAN AFFAIRS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Plaintiff Annette Ryan ("Ryan") has filed this case against her former employer, David J.

Shulkin, Secretary for the United States Department of Veteran Affairs (the "VA"), alleging

claims of hostile work environment, gender and disability discrimination, and retaliation. This

case is before the Court upon three motions: Defendant's Motion for Summary Judgment,

Doc #: 55, Defendant's Objection to Plaintiff's Evidence in Support of her Opposition to

Summary Judgment ("Defendant's Objection"), Doc #: 68, and Plaintiff's Objection to

Defendant's Reply Brief in Support of its Motion for Summary Judgment ("Plaintiff's

Objection"), Doc #: 71.  For the following reasons, Defendant's Motion for Summary Judgment is **DENIED** in part and **GRANTED** in part.  Defendant's Objection is **OVERRULED** and Plaintiff's Objection is **OVERRULED**.

## I.  Procedural Background

On October 13, 2015, Ryan filed her Complaint in Cuyahoga County Court of Common Pleas, case number CV-15-852581, against then-Secretary of the United States Department of Veteran Affairs (the "VA"), Ryan McDonald.  David Shulkin replaced McDonald as Secretary of the VA while this case was pending and has been substituted as the named defendant.  On November 20, 2015, the VA filed Notice of Removal to this Court.  Doc #: 1.

On August 21, 2017, the VA filed the instant Motion for Summary Judgment.  Doc #: 55.  Ryan filed an Opposition on October 12, 2017, Doc #: 60, and filed a Motion for Leave to File a Corrected Brief in Opposition on October 13, 2017, Doc #: 65.  The Court granted Ryan's Motion for Leave and will consider only the corrected brief.  On October 26, 2017, the VA replied to Ryan's Opposition, Doc #: 69, and also filed its Objection, Doc #: 68.  Ryan filed a Response to the VA's Objection, Doc #: 70, and filed her own Objection, Doc #: 71, on November 6, 2017.  The VA replied to Ryan's Response to the VA's Objection on November 13, 2017.  Doc #: 72.

## II.  Objections

Federal Rule of Civil Procedure 56(c)(2) allows a party to object to the admissibility of evidence presented in support or opposition of a motion for summary judgment. The Committee Notes explain:

Subdivision (c)(2) provides that a party may object that material cited to

> support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

Fed. R. Civ. P. 56 advisory committee's note to 2010 amendments. The Court will consider each party's Objection in turn.

### A.    The VA's Objection

The VA objects to two types of evidence relied upon by Ryan on the grounds that they are inadmissible hearsay: (1) the EEO Affidavit of Mr. Douglas M. Jenison (the "Affidavit") and (2) a statement made by Mr. Desi Hale (the "Statement"). Thus, the Court must determine (1) whether the Affidavit and Statement are hearsay and (2) whether any exception to the rule against hearsay applies.

"Hearsay" means a statement that: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." FED. R. EVID. 801. But hearsay does not include statements that are offered against an opposing party and (1) made by a person whom the party authorized to make a statement on the subject or (2) made by the party's employee on a matter within the scope of that relationship while it existed. FED. R. EVID. 801(D). Mr. Jenison's Affidavit was taken during the course of the VA's EEO investigation. Resp. 1; Doc #: 60-17. Mr. Jenison was an Registered Nurse on the same unit as Ryan. Def. Obj. 2. Mr. Hale's Statement was taken during an interview with VA police officer Eric Carlson. Resp. 1; Doc #: 60-17. At that time, he was a janitor at the VA. *Id.* "Employees who talk to investigators are either speaking on matters

within the scope of their duties under Fed. R. Evid. 801(d)(2)(D) or are in effect 'authorized' to cooperate with investigators, so their statements fit Fed. R. Evid. 801(d)(2)(C)." *Weinstein v. Siemens*, 756 F. Supp. 2d 839, 852 (E.D. Mich. 2010) (quoting 30B Graham, Federal Practice & Procedure, § 7021). Thus, the Affidavit and Statement are admissible under Rule 801(d)(2) so the VA's Objection is **OVERRULED**.[1]

### B.   Ryan's Objection

Ryan makes one objection: she objects to the VA presenting new evidence in its Reply in Support of its Motion for Summary Judgment. Pl.'s Obj. 1. She argues that this additional evidence violates Federal Rule of Civil Procedure 56 and asks the Court to disregard it. *Id.* "The purpose of Rule 56(c) is to afford the nonmoving party notice and a reasonable opportunity to respond to the moving party's summary judgment motion and supporting evidence."[2] *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). Rule 56(c) applies where the moving party submits new evidence in its reply. *Seay v. Tennessee Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003) ("When new submissions and/or arguments are included in a reply brief, and a nonmovant's ability to respond to the new evidence has been vitiated, a problem arises with

---

[1] Because the Court concludes that these statements are admissible under Rule 801(d)(2), it need not address Ryan's alternative arguments: (1) that the statements are not hearsay because they are not offered to prove the truth of the matter asserted; (2) that the Affidavit falls under the business records exception to hearsay rule, Rule 803(6); (3) that the Statement falls under the public records exception to the hearsay rule, Rule 803(8); or (4) that the statements are admissible under the residual hearsay exception, Rule 807.

[2] Although subsection (c) was replaced in the 2009 Amendments, Courts continue to follow this interpretation of Rule 56(c). *See Mirando v. U.S. Dept. of Treasury*, 766 F.3d 540, 548 (6th Cir. 2014), *Deere & Company*, 239 F.Supp.3d 964, 987-89 (W.D. Ky. 2017), *The Charter Oak Fire Ins. Comp. v. SSR, Inc.*, No. 11-cv-118, 2015 WL 10890126, *6-7 (E.D. Ky. July 13, 2015) *and Hanson v. Madison County Detention Center*, No. 5:14-cv-99, 2017 WL 3022323, at *2 (E.D. Ky. July 17, 2017).

respect to Federal Rule of Civil Procedure 56(c).").

The Court should allow the nonmoving party an opportunity to file a sur-reply, particularly if the Court's decision relies on new evidentiary submissions. *Seay*, 339 F.3d at 481; *see also Engineering & Mfg. Services, LLC v. Ashton*, 387 Fed. Appx. 575, 583 (6th Cir. 2010). But this does not mean that parties can *never* present new evidence in their reply briefs. *See The Charter Oak Fire Ins. Comp. v. SSR, Inc.*, No. 11-cv-118, 2015 WL 10890126, *6-7 (E.D. Ky. July 13, 2015). If Ryan wanted to address the VA's new evidence, the proper mechanism for doing so would be to move the Court for leave to file a sur-reply. She did not do so. The Court sees no reason why Ryan's decision not to move the Court to file a sur-reply requires the Court to disregard any evidence presented in the VA's Reply. Further, it appears from Ryan's brief that she only objects to additional evidence relating to her disability discrimination claim. The Court is denying summary judgment as to this claim. Thus, Ryan's Objection is **OVERRULED.**

### III.    Motion for Summary Judgment

#### A.    Legal Standard

Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). On the other hand, if a reasonable jury could return a verdict for the nonmoving party, summary judgment for the moving party is inappropriate. *Baynes v. Cleland*, 799 F.3d 600, 606 (6th Cir. 2015). The movant bears the initial burden of showing that there is no material issue in dispute. *Id*. at 607 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is deemed material only if it might affect the outcome of the case

under the governing substantive law. *Id.* (citing *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994), in turn citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986)). In reviewing a motion for summary judgment, the court must view the facts and any inferences reasonably drawn from them in the light most favorable to the nonmoving party. *Id.* (citing *Kalamazoo Acquisitions, LLC v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005)).

### B. Facts

From November 2011 through November 2014, Ryan was employed by the VA as a Licensed Practical Nurse ("LPN") on its Long Term Spinal Cord Unit ("LTSCU"). Am. Compl. ¶¶ 1, 3, 12, 13, Doc #: 5. Her immediate supervisor was Ms. Lisa Herman. Ryan Dep. 22. Ms. Elizabeth Noelker supervised Herman. Ryan Dep. 22-23. Ryan began working with nursing assistant MD Garrett immediately after starting with the VA in November 2011. Ryan Dep. 30. Garrett first began making sexually-charged comments to Ryan in early 2012. Ryan Dep. 38. By early Summer 2012, Garrett's behavior had progressed to both comments and inappropriate touching. Ryan Dep. 38-39. Garrett subjected Ryan to inappropriate touching and comments that were sexual in nature at least 2-3 times a week over a period of six months. ORM Compl. 2.

Garrett engaged in inappropriate conduct in front of Herman on several occasions. Ryan Dep. 48. On one occasion when a charge nurse was giving assignments out, Garrett made lip-smacking noises as the charge nurse was pulling her shirt to expose her bra. Ryan Dep. 49. Herman walked in and told both Garrett and the charge nurse that their behavior was inappropriate. *Id.* Another time, Ryan was sitting at a computer at the nurse's station near Herman when Garrett sat next to Ryan and began rubbing her legs. Ryan Dep. 50. Herman told Garrett to stop and he did. *Id.* Garrett would repeatedly make sexual jokes in front of Herman

and she would tell him to stop.  Ryan Dep. 50.  On more than one occasion, Ryan protested

Garrett's behavior in front of Herman.  Ryan Dep. 51.  Herman was also present during staff

meetings where Ryan would tell Garrett to stop touching her inappropriately.  Ryan Dep. 103.

Each time Herman would ask Garrett to stop.  *Id.*

For approximately six months prior to Ryan reporting Garrett to the VA Union, Garrett's

conduct continued to escalate to a level that Ryan described as "the next level of [physical]

assault."  Ryan Dep. 52-53.  Ryan was afraid to report Garrett because he had been working at

the VA longer than she had and was friends with Herman.  Ryan Dep. 87-88.  Ryan had heard

Herman "bad mouth" other employees and thought that if she said anything to Herman, Herman

would tell the other employees.  ORM Invest. Rep. at 4.  Ryan had also seen Noelker fire

employees for "much less" and she was fearful of losing her job since she was a single mother.

*Id*.

On March 26, 2013, Garrett pushed Ryan into a patient's bathroom and tried to force

himself on her.  Ryan Dep. 52-53.  After the incident, Ryan was approached by another

coworker, Ms. Roseann McDevitt, who noticed that Ryan was visibly upset.  *Id.*  McDevitt told

Ryan that Garrett had also been sexually harassing her.  Ryan Dep. 53-55.  On March 27, 2013,

Ryan and McDevitt went to the VA Union's office to report Garrett's behavior.  Ryan Dep. 62-

63.  Ryan submitted a written request to the Union for a transfer from the LTSCU to another unit

during this meeting.  Ryan Dep. 68.  Afterwards, Ryan and McDevitt went to the VA police

department to file a report and then met with Noelker.  Ryan Dep. 62-63.  During this meeting

with Noelker, Ryan repeated her request for a transfer and Noelker gave her FMLA papers to fill

out should Ryan need time off after the incident.  Ryan Dep. 89.  Ryan did not return to her

position on the LTSCU.  Ryan Dep. 110.

On March 28, 2013, VA Inspector Jeff Masler and VA Police Chief Todd Mitchell interviewed Garrett as part of the VA Police Department's investigation.  Mitchell Decl., ¶ 5, Doc #: 55.  Garrett admitted to the conduct Ryan alleged.  *Id.* at ¶ 6.  Following the interview, Garrett was placed on administrative leave for four work days.  Garrett Dep. 68-70.  Effective April 4, 2013, Garrett was transferred to the Akron Community Based Outpatient Clinic ("CBOC") pursuant to the VA's policy to transfer the perpetrator, not the victim.  Garrett Dep. 81-83.  The Cuyahoga County Grand Jury indicted Garrett on July 2, 2013 on five counts of gross sexual imposition and one count of kidnaping.  Garrett Dep. 87-88.  Garrett was placed on administrative leave without pay effective August 16, 2013, and, after being convicted of amended criminal charges, was removed from his position for conduct unbecoming a federal employee, effective July 19, 2013.  Garrett Dep. 97-99.

Ryan was diagnosed with PTSD after Garrett's assault.  Ryan sent every letter she received from her physician to Noelker.  Ryan Dep. 164-165.  She would hand deliver the letters to Noelker, put them in her mailbox in her office, or Ryan would give them to her attorney to send to Noelker.  *Id.*  Ryan's physician, Dr. Holmer, filled out an FMLA Certification of Health Care Provider for Employee's Serious Health Condition on Ryan's behalf and submitted it to the VA on April 8, 2013.  Ryan Dep. 148-151.  Both Ryan and Herman signed Ryan's April 9, 2013 request for FMLA leave from April 2013 through April 2014, which was requested because of her PTSD.  Doc #: 53-2.  That same day Ms. Herman also signed Ryan's application for the Voluntary Leave Transfer Program which specifically mentioned Ryan's PTSD as the reason for her request.  Doc #: 53-2.

While Ryan was on FMLA leave, her VA coworker Princess Jefferson called her at home and threatened that if Ryan pursued the criminal charges against Garrett, Jefferson would come to her house and beat her up. Ryan Dep. 112. Jefferson called Ryan's home several times until Ryan blocked her number. *Id.* Another coworker also called Ryan at home and threatened her. Ryan Dep. 114. Ryan claims that she reported these incidents to Noelker and Herman. Ryan Dep. 114-15. Ryan did not follow up with them. *Id.*

On May 10, 2013, Ryan filed an informal complaint with the VA's Office of Resolution Management ("ORM"). Jindra Dec. ¶ 6, Doc #: 55-11. On July 18, 2013, Ryan received a letter from the Chief of Employee Relations at the VA stating "I was recently informed of your medical emergency and have reviewed the documentation submitted by your physician." Doc #: 53-2. Dr. Holmer wrote a letter dated July 24, 2013 that Ryan was still suffering from PTSD and "[i]t would be in her best interest to be reassigned to a different location." Doc #: 53-2. On August 5, 2013, Ryan's mental health therapist wrote a letter stating that Ryan's PTSD prevented her from returning to work until she was transferred. Doc #: 53-2.

On August 14, 2013, Ryan filed a formal EEO complaint based on claims of sex discrimination and hostile work environment. Doc #: 53-2. In her complaint, she requested to be reassigned to the Parma CBOC or to the blind unit at the Wade Park Campus.[3] *Id.* On September 11, 2013, Ms. Noelker wrote a memorandum to the Chief of Human Resources at the VA and recommended approval of discretionary leave without pay (LWOP). Doc #: 53-2. Ms. Noelker noted that Ryan submitted medical documentation to support this request. *Id.* Ryan attended a mediation with the VA to attempt to resolve her EEO claims on September 26, 2013.

_____

[3] The blind unit is separate from the rest of the building. Ryan Dep. 147.

Ryan Dep. 160-61.  During the mediation, the VA wanted to see documentation of Ryan's PTSD to prove that she could no longer work on the LTSCU.  Ryan Dep. 162.  Ryan's attorney gave the VA letters from Dr. Holmer.  *Id.*  The VA offered to transfer Ryan if she dropped all claims against it.  *Id.*  Ryan refused.  *Id*.

In Fall 2013, Ryan was at the Wade Park campus to complete her student nursing clinical and ran into several of her former coworkers from the LTSCU on the elevator.  Ryan Dep. 263-64.  The three coworkers ignored Ryan and made her feel uncomfortable.  *Id.*

On October 31, 2013, the ORM informed Ryan that her EEO complaint had been accepted for investigation.  Jindra Dec. Ex. 2, Doc #: 55-11.  On November 27, 2013, Dr. Holmer wrote that Ryan continued to suffer from PTSD and "[u]nless reassigned to  work on a different unit, her time off needs to continue indefinitely."  Doc #: 53-2.

On December 12, 2013, Equal Employment Opportunity Specialist Sonya Hall wrote to Ryan that she received Ryan's Reasonable Accommodation Request and asked Ryan to complete the Confirmation for Reasonable Accommodation, Medical Documentation, and Reassignment form.  Doc #: 53-2.  Ryan believes that Dr. Holmer completed the form and Ryan's attorney returned it to Hall.  Ryan Dep. 179.  On December 16, 2013, the ORM wrote to Ryan to inform her that an independent investigator, DSZ, Inc., will investigate her EEO complaint.  Jindra Dec. Ex. 3, Doc #: 55-11.  Ryan filled out a Written Confirmation of Request for Accommodation, VA Form 0857A, on December 20, 2013.  Doc #: 53-2.  In that form, she requested to be transferred from the Cleveland VA to CBOC due to her PTSD.  *Id.*  Dr. Holmer wrote another letter dated February 4, 2014, stating that Ryan still suffered from PTSD.  Doc #: 53-2.

On February 13, 2014, EEO/Affirmative Employment Manager, Andrea Freeman, wrote

-10-

regarding Ryan's request for a Reasonable Accommodation. Doc #: 53-2. Freeman noted that she attempted to contact Ryan regarding her request but received no response. *Id.* Ryan believes that her attorney submitted the completed medical documentation to Freeman. Ryan Dep. 183. DSZ, Inc. completed its investigation on February 28, 2014 and submitted its report on March 10, 2014. Jindra Dec. Ex. 4, Doc #: 55-11.

On March 6, 2014, the VA's Local Reasonable Accommodation Coordinator, Bruce Kafer, wrote requesting that Ryan complete another written accommodation request and to submit documentation from her doctor. Doc #: 53-2. Kafer wrote Ryan again on May 13, 2014 to inform her that, due to receiving no medical documentation from her, they closed her case. Doc #: 53-2. Ryan followed-up by having her attorney contact Kafer. Ryan Dep. 184.

On August 1, 2014, VA wrote Ryan that they received medical evidence that she was able to return to work in her previous position with no restrictions and offered her a position on a different floor of the Wade Park Campus. Doc #: 53-2. This letter stemmed from an evaluation by the Workers' Compensation Department's psychiatrist Dr. Erika DeLong who concluded that Ryan could return to work without any restrictions in April 2014. Ryan Dep. 188-89. Dr. DeLong met with Ryan on only one occasion. *Id.* On September 22, 2014, Noelker wrote Ryan to inform her that since she failed to report to work, she must report to work immediately or else risk losing her job. Doc #: 53-2. Noelker again wrote Ryan on October 21, 2014 about her failure to report to work. Doc #: 53-2. Finally, on November 17, 2014, the VA writes Ryan to let her know that she has been removed from her employment, effective Friday, December 5, 2014. Doc #: 53-2. From June 2013 through December 2014, at least twelve positions opened at other VA campuses for which Ryan was qualified. Opp. Ex. 11, Doc #: 60-11.

### C. Discussion

#### 1. Hostile Work Environment

##### a. Law

Ryan brings three claims under Title VII. The first is a hostile work environment claim. To establish a prima facie case of hostile work environment sexual harassment under Title VII, an employee must demonstrate that (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual conduct or communication; (3) the conduct or communication occurred because of her sex; (4) the unwelcome sexual conduct was severe or pervasive enough so as to affect the terms and conditions of employment and create a hostile work environment; and (5) employer liability. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560-61 (6th Cir. 1999); *Marotta v. Ford Motor Co.*, 119 F.Supp.3d 676, 688 (E.D. Mich. 2015). In its Motion for Summary Judgment, the VA only disputes the fifth element: employer liability.

An employer is liable for coworker harassment if the employer "knew or should have known of the harassment, yet failed to take prompt and appropriate corrective action." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 338 (6th Cir. 2008). When determining the adequacy of the employer's remedial action, the proper inquiry is "whether the action reasonably served to prevent future harassment of the plaintiff." *Kalich v. AT & T Mobility, LLC*, 679 F.3d 464, 474 (6th Cir. 2012); *see also Jackson v. Quanex Corp.*, 191 F.3d 647, 659 (6th Cir. 1999) ("Generally, a response is adequate if it is reasonably calculated to end the harassment.").

Steps that would "establish a base level of reasonably appropriate corrective action" may include promptly initiating an investigation to determine the factual basis for the complaint, "speaking with the specific individuals identified by [the complainant], following up with [the

complainant] regarding whether the harassment was continuing, and reporting the harassment to others in management." *West v. Tyson Foods, Inc.*, 374 F. App'x. 624, 633 (6th Cir.2010); *see also Spellman v. Ohio Dept. of Transportation*, 244 F.Supp.3d 686 (S.D. Ohio 2017) (employer remedial action sufficient where employer initiated an EEO investigation, transferred one harasser and suspended him for five days, and fired the other harasser) *and Collette v. Stein-Mart, Inc.*, 126 F. App'x. 678, 686 (6th Cir.2005). "The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified." *Collette*, 126 F. App'x. 686 (quoting *Swenson v. Potter*, 271 F.3d 1184, 1193 (9th Cir. 2001)). "By doing so, 'the employer puts all employees on notice that it takes such allegations seriously and will not tolerate harassment in the workplace.'" *Id.*

Summary judgment is appropriate in cases of reoccurring harassment where the employer escalates its disciplinary action after previous actions were insufficient. *See Powell-Lee v. HCR Manor Care*, 231 F. App'x 438, 442 (6th Cir. 2007) (Employer remedial action found sufficient where employer conducted investigations, suspended the perpetrator at least 3 times, forbade him to work on the floor where the victim worked, ordered perpetrator to attend a sexual harassment in-service training program, and applied a progressive discipline procedure.) *and Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868 (6th Cir. 1997).

### b.    Application

On summary judgment, the Court has to determine if a reasonable jury could conclude that (1) Herman knew or should have known about Garrett's behavior and (2) that Herman did not take action reasonably served to prevent Garrett from harassing Ryan in the future.

-13-

The VA argues that it did not know, or have reason to know, of the alleged harassment until Ryan reported it on March 27, 2013. Mot. at 9. However, the VA admits that there is conflicting deposition testimony as to whether Herman witnessed instances of sexual harassment before Ryan reported it. *Id.* Ryan testified that Garrett engaged in inappropriate conduct in front of Herman on several occasions. Ryan Dep. 49. On each of these occasions, Herman told Garrett to stop but did nothing further. Ryan Dep. 49, 50, 51, 103. RN Doug Jenison also reported that sexually-charged or otherwise inappropriate comments were made in front of Herman regularly and that Herman would just "blow them off." Doc #: 60-17, Ex. 5. Herman testified that she does not recall Garrett making inappropriate jokes in her presence. Herman Dep. 80-81, 88, 156-58.

Courts may not resolve credibility disputes on summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). This rule of procedure typically applies where there is a genuine conflict in the evidence, with affirmative support on both sides, and where the question is which witness to believe. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2726, at 447 (3d ed. 1998) ("Thus, for example, if conflicting testimony appears in affidavits and depositions that are filed, summary judgment may be inappropriate as the issues involved will depend on the credibility of the witnesses."). Thus, whether Herman knew or should have known about Garrett's inappropriate behavior is an issue for the jury to decide.

The VA also argues that it took sufficient remedial action to prevent future harassment by immediately opening a police investigation after Ryan reported the harassment to the VA police on March 27, 2013. Mot. at 15. But a reasonable jury could conclude that the VA was aware of

the harassment months before Ryan officially reported it, and that the VA's inadequate response culminated in Garrett attacking Ryan on March 26, 2013. Summary judgment is properly denied where a jury could find that the employer's response was untimely because it knew that the harassment was occurring but waited to begin an inquiry until after the plaintiff filed a formal complaint. *Kasprzak v. DaimlerChrysler Corp.*, 395 F. Supp. 2d 636, 641-42 (N.D. Ohio 2005). Further, if the jury decides that Herman did know about Garrett's behavior prior to March 27, 2013, the jury must decide if Herman simply telling Garrett to stop after several instances of inappropriate behavior was sufficient remedial action to prevent future harassment. While hindsight is always 20/20, the fact that whatever action Herman took did not prevent Garrett from attacking Ryan is evidence a jury should consider.

Accordingly, the Court cannot grant summary judgment on Ryan's hostile work environment claim.

### 2. Gender Discrimination

Ryan also brings her gender discrimination claim under Title VII. Title VII requires plaintiffs to file a timely charge of employment discrimination with the EEOC and obtain a right-to-sue letter before filing suit. *See* 42 U.S.C. § 2000e–5(f)(1); *Granderson v. University of Michigan*, 211 F. App'x. 398, 400 (6th Cir. 2006). On August 14, 2013, Ryan filed a formal EEO complaint and included her gender discrimination claim. Doc #: 53-2. She received the Final Agency Decision on June 20, 2014 which included notice of the right to sue. Doc #: 8-5 at 18. Thus, her gender discrimination claim is properly before this Court.

### a. Law

Ryan has proffered circumstantial evidence of gender discrimination so the Court

analyzes her claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of gender discrimination. *Id.* Then, the defendant bears the burden of articulating some legitimate, non-discriminatory reason for its actions. *Id.* Lastly, the burden shifts back to the plaintiff to show that the defendant's offered reason was not the real reason behind the employment decision. *Id.*

To establish a prima facie case of gender discrimination, a plaintiff must show (1) that she is a member of a protected group, (2) that she was subject to an adverse employment decision, (3) that she was qualified for the position, and (4) that she was treated differently than similarly-situated individuals. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992).

To establish that an employer treated a similarly-situated individual more favorably, an employee must show that she and the individual are "similarly-situated in all respects." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992); *see also, Stotts v. Memphis Fire Dep't*, 858 F.2d 289 (6th Cir. 1988). In order to be considered similarly-situated, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

### b.     Application

The VA's policy during the pendency of an investigation for sexual harassment is to

transfer the accused employee, not the accuser. Robinson Decl. ¶ 14, Doc #: 55-8. That policy is gender-neutral. *Id.* Ryan does not present any evidence that she was treated differently than similarly-situated males who were victims of sexual harassment. The only evidence she provides is that Garrett was transferred instead of her. Opp. at 15. But Ryan and Garrett are not similarly-situated individuals because they engaged in different conduct and, therefore, received different treatment. Garrett engaged in inappropriate conduct and sexually harassed and attacked Ryan. As a result, he was transferred during the investigation of his case pursuant to the VA's policy. Neither party alleges that Ryan engaged in conduct even slightly similar to that of Garrett's. Thus, Garrett and Ryan are not similarly-situated. Because Ryan has not provided any evidence to the Court showing that she was treated differently than similarly-situated employees, there is no evidence from which a jury could conclude that the VA discriminated against Ryan based on her gender.

Accordingly, the Court grants summary judgment on Ryan's gender discrimination claim.

### 3. Disability Discrimination

#### a. Law

Ryan brings her claim for disability discrimination under the Rehabilitation Act. As with her gender discrimination claim, Ryan's disability discrimination claim is analyzed under the *McDonnell Douglas* framework. *See Gohl v. Livonia Public Schools School Dist.*, 836 F.3d 672, 682 (6th Cir. 2016). Courts also analyze Rehabilitation Act claims the same as claims brought under the Americans with Disabilities Act of 1990 (the "ADA"). *See Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 418 (6th Cir.2004). Under the ADA, employers must make "reasonable accommodations to the known physical or mental limitations of an otherwise

-17-

qualified individual with a disability who is an ... employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business." 42 U.S.C. § 12112(b)(5)(A).

To establish a prima facie failure to accommodate claim under the ADA, Ryan must show that: (1) she was disabled within the meaning of the Act; (2) she was otherwise qualified for the position, with or without reasonable accommodation; (3) the VA knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the VA failed to provide the necessary accommodation. *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x. 974, 982–83 (6th Cir. 2011).

The VA does not dispute that Ryan was qualified for her LPN position so the Court will only analyze the other four factors of a prima facie case.

### i.      Disability

The ADA defines a "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities" of an individual. 42 U.S.C. § 12102(2)(B). The ADA provides that the definition of disability "shall be construed in favor of broad coverage of individuals . . .." 42 U.S.C. § 12102(4)(A). In 2008, Congress passed the ADA Amendments Act of 2008 ("ADAAA") to "reinstat[e] a broad scope of protection to be available under the ADA." ADA Amendments Act of 2008, Pub. L. 110-325, 122. Stat. 3553, § 2 (2008). The Act further states that "an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).

The ADAAA regulations provide that the Court should not undertake an extensive analysis in determining whether a plaintiff is disabled because "the primary object in cases

-18-

brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability." 29 C.F.R. § 1630.1(c)(4). Further, with certain specific impairments, "it should be easily concluded that [the impairments] . . . substantially limit the major life activities indicated." 29 C.F.R. § 1630.2(j)(3)(iii). Relevant to Ryan's case, the regulations state that the Court should easily conclude that "post-traumatic stress disorder . . . substantially limit[s] brain function." 29 C.F.R. § 1630.2(j)(3)(iii). The ADA considers "brain function" to be a "major life activity" so any impairment that limits brain function qualifies as a disability. 42 U.S.C. § 12102(2)(B). Thus, PTSD is a qualifying disability under the ADA.

Ryan has submitted evidence in the form of letters from her physician Dr. Holmer and her mental health therapist that she was diagnosed with PTSD. *See* Doc #: 53-2 at 83 and Doc #: 53-3 at 80. The VA does not dispute that Ryan suffered from PTSD and they only cite pre-ADAAA authority for why Ryan's disability should not qualify under the ADA. Mot. at 20-22. Thus, Ryan has shown that she is disabled under the Act.

### ii.      Knowledge of Disability

Generally, "[a]n employer has notice of the employee's disability when the employee tells the employer that he is disabled." *Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 737 (6th Cir. 2015) (quoting *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 450 (6th Cir.1999)). The VA acknowledges that it learned of Ryan's PTSD diagnosis on April 9, 2013 when she first applied for FMLA leave. Reply At 14.

### iii.     Reasonable Accommodation Request

Sixth Circuit "case law establishes no bright-line test for when the form of an employee's

request is sufficiently clear to constitute a request for accommodation." *Judge v. Landscape Forms, Inc.*, 592 F. App'x. 403, 407 (6th Cir. 2014). A plaintiff does not need to use the words "accommodate" or "disability" but at a minimum she must "make it clear from the context that [the request] is being made in order to conform with existing medical restrictions." *Leeds v. Potter*, 249 F. App'x. 442, 449 (6th Cir. 2007). An employee must provide her employer with sufficient basis to understand that the request is being made because of her disability. *Stanciel v. Donahoe*, 570 F. App'x. 578, 583 (6th Cir. 2014) (requesting a "revised work schedule" without letting the employer know that Plaintiff needed the accommodation because of his disability provides the employer with no reason to know that the employee is requesting an accommodation for his disability).

The VA argues that Ryan can not maintain an accommodation claim because she did not respond to the VA Reasonable Accommodation Department's requests for documentation after she contacted them on December 11, 2013 to request a transfer. Mot. at 23. Neither the ADA or the VA's Reasonable Accommodation policies required that Ryan formally complete the Reasonable Accommodation process in order to obtain accommodation for her disability. The VA's policy requires three things of an employee requesting a reasonable accommodation: (1) that the employee make a request or make known their need for an accommodation to their supervisor, any manager in their chain of command, or the Local Reasonable Accommodation Coordinator; (2) that the employee engage in the interactive process by working collaboratively with the VA to identify accommodations that will help them perform the essential functions of their job; and (3) if the disability is not visible and documentation is not on file at the VA, provide the requested information from their health care professional in a timely manner. Doc #:

69-12.

Ryan has presented evidence that she requested a transfer because of her PTSD. Her physician wrote a letter stating that Ryan was suffering from PTSD and "[i]t would be in her best interest to be reassigned to a different location." Doc #: 53-2 at 83. Ryan's mental health therapist also wrote a letter detailing Ryan's PTSD and noting that Ryan would be able to return to work once her transfer request was approved. Doc #: 53-3 at 80. These documents were given to the VA during the September 26, 2013 mediation of Ryan's EEO claims. Ryan Dep. 160-61. Further, Ryan contends that she submitted a written request and all completed medical documentation to the VA. Ryan Dep. 183. Thus, a reasonable jury could conclude that the VA did have notice of Ryan's reasonable accommodation request.

### iv.    Failure to Accommodate

"Once an ADA plaintiff establishes a prima facie case for failure to accommodate, 'the burden shifts to the employer to demonstrate that the employee cannot reasonably be accommodated, because the accommodation would impose an undue hardship on the operation of its programs.'" *Myers v. Cuyahoga County, Ohio*, 182 F. App'x 510, 515-16 (6th Cir. 2006) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004)). Here, the VA makes no argument that transferring Ryan to a different location would cause it undue hardship.

Accordingly, the Court denies summary judgment on Ryan's disability discrimination claim.

### 4.    Retaliation

Ryan brings her last claim for retaliation under Title VII. "It is well settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant

-21-

explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." *Strouss v. Michigan Dept. of Corr.*, 250 F.3d 336, 342 (6th Cir.2001) (citing *Abeita v. Transamerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998)). "Generally, retaliation claims based on conduct that occurs *after* the filing of the EEOC charge can be reasonably expected to grow out of the charge." *Strouss* at 343 (citing *Duggins v. Steak ' N Shake, Inc.*, 195 F.3d 828, 832-33 (6th Cir.1999)). This is because "retaliation claims, by definition, arise after the filing of an EEOC charge" and the purpose of this rule is to "promote efficiency by requiring only one filing." *Johnston v. O'Neill*, 272 F. Supp. 2d 696, 705 (N.D. Ohio 2003) (citing *Ang v. Procter & Gamble.*, 932 F.2d 540, 546-47). So, Ryan's retaliation claim is properly before the Court.

Ryan makes claims of both co-worker and employer retaliation. As with Ryan's discrimination claims, the Court must analyze both claims pursuant to the *McDonnell Douglas* burden-shifting standard. *Satterfield v. Karnes*, 736 F. Supp. 2d 1138, 1170 (S.D. Ohio 2010).

### a.    Coworker Retaliation

### i.    Law

To establish a claim for coworker retaliation, a plaintiff must show: (1) the coworker's retaliatory conduct is sufficiently severe so as to dissuade a reasonable worker from making or supporting a charge of discrimination, (2) supervisors or members of management have actual or constructive knowledge of the coworker's retaliatory behavior, and (3) supervisors or members of management have condoned, tolerated, or encouraged the acts of retaliation, or have responded to the plaintiff's complaints so inadequately that the response manifests indifference or unreasonableness under the circumstances." *Satterfield*, 736 F. Supp. 2d at 1170.

The Sixth Circuit further provides a non-exhaustive list of factors for the court to consider in making the "severe or pervasive" determination, which includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) (quoting *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir.2006)). Further, the conduct at issue must also be retaliatory, not merely uncivil or even abusive behavior by itself; the plaintiff must show some evidence that the complained-of actions were motivated by her exercise of a protected right. *Perkins v. Harvey*, 368 F. App'x. 640, 647-48 (6th Cir. 2010).

### ii. Application

First, Ryan must show that her coworker's conduct was so severe that it would deter a reasonable worker from reporting harassment. Reporting sexual harassment is a protected activity under Title VII. *See Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 213 F.Supp.3d 951, 959 (E.D. Tenn. 2016). While Ryan was on FMLA leave, her VA coworker Princess Jefferson called her at home and threatened that if Ryan pursued the criminal charges against Garrett, Jefferson would come to her house and beat her up. Ryan Dep. 112. A second coworker also allegedly called Ryan at home and threatened her. Ryan Dep. 114. In Fall 2013, while Ryan was on the Wade Park campus completing a nursing clinical, she ran into several of her former coworkers and they ignored her. Ryan Dep. 263-64. While giving the cold shoulder is not sufficiently severe conduct to establish a retaliation claim, a reasonable jury could find that coworkers' threats of physical violence would dissuade a reasonable employee from making discrimination claims.

-23-

Next, Ryan must show that her supervisors knew about the threats and either condoned them or did not adequately address them. Ryan claims that she reported these incidents to Noelker and Herman. Ryan Dep. 114-15. Ryan did not follow up with either supervisor to find out how they addressed her complaint. Ryan Dep. 114-15. The VA claims that it conducted mandatory in-service staff training to address sexual harassment. Mot. at 25. Ryan does not claim that she received any threats from coworkers after she reported the previous threats to her supervisors. Ryan cannot show that the VA's response was unreasonable since the conduct stopped. Thus, Ryan cannot make out a claim for coworker retaliation and the Court must grant summary judgment on this claim.

### b.     Employer Retaliation

### i.     Law

The prima facie elements that a plaintiff must establish for an employer retaliation claim are: (1) "that she engaged in protected activity;" (2) "that her employer knew she engaged in protected activity; that her employer took materially adverse action against her;" and (3) "that her employer took the action because she engaged in protected activity." *Roberts v. Principi*, 283 F. App'x 325, 331 (6th Cir. 2008).

### ii.     Application

To begin, the Court addresses whether Ryan has made out a prima facie case of retaliation. First, the Court addresses whether Ryan engaged in protected activity and whether her employer was aware of it. These elements are not disputed: Ryan filed her EEO Complaint on August 14, 2013, and the VA was aware she had done so because she filed it with the VA's ORM. Jinda Dec. ¶ 6, Doc #: 55-11.

Second, the Court addresses whether the VA took an adverse employment action against Ryan. An adverse employment action requires "a loss of pay or benefits, a detrimental change in responsibilities, a negative change in the terms or conditions of employment, or some other actual and unfavorable change in job status." *Barrett v. Lucent Techs., Inc.*, 36 F. App'x 835, 841 (6th Cir. 2002). Ryan has only alleged two actions by the VA that could rise to the level of an adverse employment action under the law: the VA's refusal to transfer her and the VA terminating her. First, the VA did not transfer Ryan to a different VA facility. "A refusal to grant a change requested by an employee is not an adverse employment action unless the employee has a right to the requested change by law or through the terms and conditions of his employment." *Barrett v. Lucent Techs., Inc.*, 36 F. App'x 835, 842 (6th Cir. 2002) (citing *Randlett v. Shalala*, 118 F.3d 857, 862 (1st Cir.1997)). Ryan had a right to transfer by law pursuant to her disability accommodation request. *See* § III (3). Second, Ryan was terminated from her position at the VA effective December 5, 2014. Doc #: 53-2 at 151. Termination is an adverse employment action. *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999).

Third, the Court must address the matter of causation. Retaliation claims must be proved according to traditional principles of but-for causation. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* So, Ryan must show that she would not have been denied transfer or terminated had she not filed her EEO complaint. The VA terminated Ryan's employment after the VA offered her a position on a different floor of the Wade Park Campus and Ryan failed to return to work. Doc #: 53-1. Ryan puts forth no evidence that shows that she was terminated because she filed her EEO Complaint.

Thus, Ryan cannot show that the VA retaliated against her by firing her.

On the other hand, Ryan had a right to be transferred by law on September 26, 2013, the date she first made a disability accommodation request for a transfer. Ryan Dep. 160-61. That is a little over a month *after* Ryan filed her EEO Complaint. After receiving Ryan's medical documentation for her reasonable accommodation request on September 26, 2013, the VA offered to transfer Ryan only if she dropped her EEO claims. Ryan Dep. 162. So, a reasonable jury could conclude that had Ryan not filed her EEO Complaint, she would have been transferred. A reasonable jury could conclude that by conditioning its grant of Ryan's request for a transfer upon Ryan's withdrawal of her EEO claims, the VA was punishing Ryan for engaging in protected activity.

Last, since Ryan has established a prima face case that the VA retaliated against her by failing to transfer her, the VA must articulate a non-discriminatory reason for not transferring her. *See Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). The VA argues that Ryan never submitted a written transfer request to management and never applied for any of the open positions. Mot. at 28. But Ryan was not required by law to submit a written transfer request and the VA does not offer any non-discriminatory reason why it failed to transfer Ryan after receiving her accommodation request in September 2013.

Thus, the Court denies summary judgment as to Ryan's employer retaliation claim.

**IV.    Conclusion**

For the reasons stated above, Defendant's Objection, Doc #: 68, is OVERRULED,

Plaintiff's Objection, Doc #: 71 is OVERRULED, and Defendant's Motion for Summary

Judgment is DENIED in part and GRANTED in part.

*/s/ Dan A. Polster Dec. 8, 2017*
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**
